IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 15, 2020

## STATE OF TENNESSEE v. JORGE PENA

**Appeal from the Circuit Court for Rutherford County**
**No. F-76091  Royce Taylor, Judge**

_____

### No. M2018-02082-CCA-R3-CD

_____

The Defendant-Appellant, Jorge Pena, was convicted of three counts of rape of a child and three counts of aggravated sexual battery, for which he received an effective sentence of forty years imprisonment. The sole issue presented for our review is whether the trial court erred in qualifying a local police officer as an expert in Spanish language translation and admitting his translation of pretextual phone calls between the Defendant and the victim's mother at trial. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ., joined.

Jeffrey S. Burton, Assistant Public Defender, for the Defendant-Appellant, Jorge Pena.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Hugh T. Ammerman, III, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Defendant, the twelve-year-old victim's stepfather, had lived with the victim, her mother, and her siblings since the victim was five years old. As relevant to the issue raised in this appeal, the victim testified with the aid of a certified Spanish interpreter that in February of 2016, the Defendant committed multiple sexual acts against her. On one occasion, the Defendant touched the outside of the victim's vagina and breasts with his hands while she was in her brother's room. Another time, the Defendant woke the victim while she was asleep in her bed and touched her breasts and inside and outside her vagina with his hands. Each time the Defendant touched the victim, he discussed sexual matters

with her and asked her if she wanted to have sex. The victim testified that the offenses occurred after her mother had gone to work. The victim also recalled that the Defendant put his penis inside her vagina once while she was in her bed and once while they were in her mother's bed. The Defendant also forced the victim to touch his penis with her hand while they were in the bathroom and then had sex with her. During these offenses, the Defendant told the victim that he put a "protector" on his penis, which is where the victim observed white liquid from the Defendant's penis after they had sex. The victim also recalled one occasion when the Defendant forced her to engage in fellatio. The last time the Defendant touched the victim's breasts and forced her to have vaginal sex, the victim said that they were in the living room and her mother came in and caught them. The victim was reluctant to report the Defendant's abuse because he told her that he would go to jail if anyone knew.

The victim's mother testified that on the night of February 14, 2016, she was sick and went to bed early. When she awoke later that night, she noticed the victim had not come to bed. As she went into the living room to look for her, she saw the victim jump from a couch the Defendant was lying on to another sofa and cover herself with a blanket. The victim's mother noticed that the victim's underwear and shorts were on the Defendant's lap, removed the blanket from the victim, and saw that the victim was naked from the waist down. The victim's mother accused the Defendant of abusing the victim, but he pretended to be asleep. After arguing over the matter, the Defendant eventually left the house. The victim's mother tried to talk to the victim, but she was crying and inconsolable. The victim's mother called the Defendant later that night, and they talked outside on the porch. The victim's mother told him she was concerned that the victim may be pregnant, but the Defendant assured her that he had used a condom. The Defendant also admitted that he had had sexual relations with the victim "only three times." The victim's mother placed the victim's clothes from the night of the assault in a plastic bag and later found the Defendant's clothes hidden at the bottom of the laundry hamper. She stored both outfits separately and eventually turned them over to the police.

The next day, the victim's mother went to the police station with her brother-in-law acting as an interpreter. Although Detective Bo Davis was the lead investigator in this case, Officer Alex Chang worked closely with him and interpreted two pretextual phone calls made by the victim's mother to the Defendant, both of which were conducted in Spanish.[1] Over the Defendant's objection, Officer Chang testified as an expert in the Spanish language and translated the relevant portions of each phone call between the

---

[1] These recordings were entirely in Spanish and preserved at trial on a compact disc (CD) for identification purposes only. However, there was no transcript of the recordings in the initial record on appeal. On August 1, 2019, this court granted a motion to supplement the record with a certified translation of the recordings. On August 8, 2019, this court received a 27-page transcript of each call which was transcribed by a State certified interpreter and translator.

victim's mother and the Defendant at trial. In the first call, Officer Chang described the Defendant's demeanor as "somewhat calm" and cooperative. The victim's mother asked the Defendant, "Why did you do it?" Officer Chang translated the Defendant's response as, "I asked myself the same thing." The victim's mother also confronted the Defendant "with the fact that he had told her the night before that it had happened three times?" Officer Chang translated the Defendant's response as, "he told her that because … she was so upset. So, he wanted to calm her down." Officer Chang said that in response to repeated questioning by the victim's mother, the Defendant "mostly paus[ed]" or was silent. He would then ask the victim's mother her location or from where she was calling. Officer Chang said that the Defendant wanted to meet the victim's mother face to face and that the Defendant was primarily concerned with whether he would see his biological daughter, the victim's younger sister, again. In response, the victim's mother suggested to the Defendant that he would never see his family again because of what the Defendant did to the victim. The Defendant's response to the victim's mother was that he "had made a mistake."

Officer Chang testified that the Defendant's demeanor changed in the second phone call. The Defendant became "more argumentative" and "denied everything." At this point, the Defendant insisted on meeting the victim's mother face to face, and Officer Chang was suspicious that the Defendant knew the victim's mother was calling from the police station. Once again, the victim's mother confronted him with "what she had seen and the fact that he had told her the night before that it happened three times." The Defendant responded as he did in the first call and explained that he only wanted to calm the victim's mother down. Officer Chang provided additional translation services during the victim's forensic interview and during the taking of the Defendant's statement at the time of his arrest. The victim disclosed multiple acts of sexual abuse against her by the Defendant during the interview. A recording of the Defendant's statement and Officer Chang's simultaneous translation of the statement was admitted into evidence and played for the jury. During the Defendant's recorded statement, he denied abusing the victim.

The Defendant testified at trial and denied having touched the victim's breasts and genitalia, and he insisted that he had not molested her. The jury convicted the Defendant as charged, and he later received an effective sentence of forty years' imprisonment. Following an unsuccessful motion for new trial, the Defendant filed a timely notice of appeal. This case is now properly before this court for review.

## ANALYSIS

The Defendant argues that it was error for the trial court to allow Officer Chang to translate the recorded phone conversations between him and the victim's mother. According to the Defendant, a trial judge is required to use a neutral translator who is not

personally invested in the outcome of the trial. In response, the State argues that the trial court was within its discretion in appointing a qualified translator. In the alternative, the State argues that allowing Officer Chang to translate portions of the pretextual phone call was harmless error. We agree with the State.

Prior to Officer Chang's testimony and on the second day of trial, defense counsel objected to portions of the Defendant's statement that were translated by Officer Chang because it had not been translated and transcribed by a court certified translator. In response, the State expressed surprise at defense counsel's late objection to the admissibility and accuracy of the recording. The State explained to the trial court that Officer Chang was fluent in Spanish and was used routinely to translate from Spanish to English in Rutherford County. The trial court reserved its ruling until after the voir dire of Officer Chang.

Officer Alex Chang identified his ethnicity as Chimadena, meaning that his mother was from Cuba and his father from China. He spoke only Spanish for the first eleven years of his life. He lived in Cuba until he was nine or ten years old and moved to Madrid, Spain, where he lived for another year. He then moved to the United States and learned to speak English. He completed twelve years of school in the States and had some college credits. He regularly spoke Spanish and English and considered himself fluent in both languages. Officer Chang testified that he had been recognized previously as an expert in Spanish translation by the Rutherford County Courts and had communicated with the victim's mother and the victim in Spanish during his police duties. As the State offered to admit the recording of the pretextual phone calls into evidence, defense counsel renewed his objection to the qualifications of Officer Chang as an expert witness. The trial court then permitted defense counsel to question Officer Chang.

Officer Chang agreed that there were several distinct Spanish dialects, but he was comfortable speaking with people who spoke regional dialects. Officer Chang compared the difference in Spanish dialects to the differences between American English and Oxford English. Prior to becoming a police officer, Officer Chang was a manager of operations for a service company and routinely communicated with people from Mexico, El Salvador, Honduras, Columbia, Nicaragua, Venezuela, and several other Central and South American countries. Officer Chang was confident in his ability to translate and had not experienced any problems doing so. He also agreed that he had not been certified by the courts as a professional interpreter and had not received any training as an interpreter. The trial court determined that Officer Chang was "qualified to interpret based on his knowledge, skill, and experience." Officer Chang then testified regarding his translation of the pretextual phone calls made by the victim's mother to the

Defendant. He also confirmed that he was present during the Defendant's statement and served as a translator for the lead detective, which was played for the jury.

"Appointment of an interpreter of a witness's testimony in a criminal case is a matter for the trial court's discretion subject to reversal only for abuse of that discretion." State v. Van Tran, 864 S.W.2d 465, 475 (Tenn. 1993). While the better practice is to appoint a neutral, uninterested party as a translator, a trial court may allow an interested party to translate if it determines that a disinterested interpreter cannot be reasonably found and that the interested translator would give an accurate and unbiased translation. Id. at 476. A complaining party must demonstrate prejudice in order to be entitled to relief. Id.

As an initial matter, the Defendant does not argue that the translation by Officer Chang was inaccurate or prejudicial. Nor does he explain how the trial court abused its discretion in qualifying Officer Chang as an expert in translating the pretextual calls or the Defendant's statement from Spanish to English. Significantly, the record shows the victim's mother testified extensively at trial and confirmed her participation in the pretextual phone calls. She also translated the pertinent portions of the calls during her testimony. The victim's mother testified that during the pretextual call the Defendant agreed that he told her he had only had sex with the victim three times even though he said this not because it was the truth, but in an attempt "to calm her down." The victim's mother also testified that during the pretextual call the Defendant told her that he made a mistake. The Defendant did not object to her testimony at trial, and Officer Chang's testimony and translation of the pretextual calls was essentially the same. Moreover, we have reviewed the certified copy of the transcript of the recordings, and there are no material differences. Finally, to the extent that the Defendant suggests that Officer Chang's translation of his statement was improper, we note that, as translated, the Defendant's statement denied the allegations of abuse in this case which was consistent with his trial testimony. Accordingly, the Defendant has failed to demonstrate prejudice, and he is not entitled to relief.

## CONCLUSION

Based on the aforementioned reasoning and analysis, the judgments of the trial court are affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE